UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOE FELDER,

                                        Plaintiff,

                -vs-                                              10-CV-343(JTC)

CORRECTION OFFICER DIEBEL, and
CORRECTION OFFICER HULTON,

                                        Defendants.

_____

APPEARANCES:                    JOE FELDER, Plaintiff *Pro Se.*

                                        HON. ERIC T. SCHNEIDERMAN, ATTORNEY
                                        GENERAL OF THE STATE OF NEW YORK,
                                        (STEPHANIE JOY CALHOUN, ASSISTANT
                                        ATTORNEY GENERAL, OF COUNSEL), Buffalo,
                                        New York, Attorneys for Defendants.


## INTRODUCTION

Plaintiff brought this action pursuant to 42 U.S.C. § 1983 seeking compensatory

and punitive damages for the alleged violation of his rights under the First and Eighth

Amendments.  Currently pending before the court is the defendants' motion for

summary judgment (Item 35).


## BACKGROUND

Plaintiff commenced this action on April 26, 2010 with the filing of a *pro se*

complaint pursuant to Title 42 U.S.C. § 1983 (Item 1).  Specifically, plaintiff, an inmate

at Attica Correctional Facility ("ACF"), alleges that he was choked and slapped by

defendant Correction Officer ("CO") Diebel in violation of his Eighth Amendment right to

be free from cruel and unusual punishment.  Additionally, plaintiff alleges that he was

verbally threatened by defendant CO Hulton in retaliation for the filing of a grievance in

violation of the First Amendment.  In an order filed May 26, 2010, plaintiff was granted

permission to proceed *in forma pauperis* (Item 5).

Defendants filed answers to the complaint on April 11, 2011 (Items 14, 15).  On

June 21, 2011, the parties consented to the referral of this matter to United States

Magistrate Judge H. Kenneth Schroeder, Jr. pursuant to 28 U.S.C. § 636 (c) for all

further proceedings including the entry of judgment (Item 20).  Following the parties'

exchange of discovery materials, on April 24, 2012, the defendants moved for summary

judgment (Item 35).  The notice of motion contained a "Notice to *Pro Se* Litigants

Opposing Summary Judgment," in which plaintiff was advised that he may not oppose

summary judgment simply by relying on the allegations in the complaint.  Additionally,

plaintiff was warned that if he failed to respond to the motion for summary judgment "on

time with affidavits or documentary evidence contradicting the facts asserted by

defendant, the Court may accept defendant's factual assertions as true" and enter

judgment in favor of defendant.  *Id.,* p.2.

The plaintiff has not filed a response to the motion.  On October 25, 2011, the

case was transferred to the docket of the undersigned (Item 37).  The court has now

determined that oral argument is unnecessary.  For the reasons that follow, the

defendants' motion for summary judgment is granted, and the complaint is dismissed.

2

**FACTS**[1]

In support of the motion for summary judgment, defendants have submitted a declaration with supporting exhibits, including a partial deposition transcript of plaintiff Joe Felder (Item 35, att. 3, Exh. A). Plaintiff stated that on his way to the recreation yard on July 18, 2009, defendant Diebel told plaintiff to "get on the wall." *Id.,* p. 18. Eight officers were present. *Id.* at 21. Plaintiff testified that he was prompted by Diebel to put his hands on the door and spread his feet out, and was asked if he had anything sharp in his pocket. *Id.* When Plaintiff responded that he had nothing sharp, defendant Diebel searched plaintiff's pockets. *Id.,* p. 21. He found cigarettes and threw them on the floor. *Id.* Plaintiff stated that defendant Diebel then told plaintiff to turn around. *Id.* Defendant Diebel took his right hand and grabbed plaintiff by the throat. *Id.* Plaintiff further testified that Diebel slapped plaintiff with his left hand and said, "Two years ago, you looked at me funny and gave me the evil eye, do you remember?" *Id.*, pp. 21-22. Plaintiff answered "No," and was slapped again by Diebel on the left side of plaintiff's face. *Id.,* p. 22. Plaintiff stated that he instantly felt pain and was woozy, "like he knocked me out." *Id.* at 23-24. He "saw stars," but did not have the wind knocked out of him . *Id.,* p. 24. Instead of going to the yard, plaintiff stated that "they sent me right back upstairs because he knew he hurt me." *Id.* at 24. In a grievance dated July 18, 2009, plaintiff stated that defendant Diebel threatened, "Next time I'll kill your ape ass." (Item 1, p. 9).

During the investigation of plaintiff's grievance, the defendants presented a

---

[1] This factual statement is taken from the defendants' declarations in support of the motion with exhibits (Item 35) and the plaintiff's complaint (Item 1).

3

significantly different version of events.  Defendant Diebel reported that he conducted a random pat frisk under the supervision of Sergeant Cheney in B-Block while plaintiff was going to the recreation yard (Item 35, att. 4, Exh. A, p. 12).  CO Diebel found a cassette tape on plaintiff during the pat frisk.  *Id.*  Sergeant Cheney stated that he was present and authorized the pat frisk of plaintiff by CO Diebel. *Id.*, p. 19.  CO Diebel and Sergeant Cheney both asserted that plaintiff was able to return to his cell with the cassette tape instead of proceeding to recreation and that plaintiff was neither struck, choked, nor hit by CO Diebel or any other officer. *Id.,* pp. 12, 16, 19.

On July 20, 2009, plaintiff requested medical treatment, complaining of injuries he received during the alleged assault of July 18, 2009 (Item 35, att.4, Exh. A, p. 13). At approximately 1:05 pm, plaintiff was examined by Jacqueline Berlinghoff, RN (Item 35, att. 5, ¶ 5).  Berlinghoff concluded that, although plaintiff complained of face pain and a sore throat, there was no "redness, bruising or scratches found on the face and no redness, cuts or abrasions present on the throat."  *Id.*  Additionally, Nurse Berlinghoff "saw no visible signs of an excessive use of force . . . [and] no injury consistent with plaintiff's allegations of being slapped, punched or choked."  *Id.,* ¶ 7.  No treatment was necessary (Item 35, att. 4, Exh. A, p. 13).

Plaintiff testified that on August 6, 2009, while in the mess hall, defendant Hulton approached him and said, "Why you looking at me?" and "I better not catch you looking at me nowhere in this facility because if I catch you looking at me in the facility again, I'm going to f— you up . . . and I don't care where in the building we at.  Don't look at me."  (Item 35, att. 3, Exh. A, pp 36-37).  Plaintiff admitted that CO Hulton did not strike him, but that he just "verbally threatened . . . and physically threatened" him.  *Id.*, p. 38.

4

On August 10, 2009, plaintiff filed a grievance, in which he stated that he believed Hulton's threat was in retaliation for his previous grievance against CO Diebel (Item 35, att. 4, Exh. B, p. 26).  In response to the grievance, CO Hulton stated that he "called [plaintiff] out of line while exiting the messhall to inform him that while in the messhall he must face forward in his seat at all times." *Id.*, p. 30.  CO Hulton denied any harassment, threats, or retaliation.  *Id.*

**DISCUSSION**

**1.  Summary Judgment Standard**

Rule 56 provides that, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Although the language of this Rule has been amended in recent years, the well-settled standards for considering a motion for summary judgment remain unchanged. *See, e.g., Faulkner v. Arista Records LLC*, 797 F. Supp. 2d 299, 311 n.7 (S.D.N.Y. 2011).  Under those standards, the party seeking summary judgment bears the initial burden of establishing that no genuine issue of material fact exists. *Rockland Exposition, Inc. v. Great American Assur. Co.*, 746 F. Supp. 2d 528, 532 (S.D.N.Y. 2010), *aff'd*, 445 Fed. Appx. 387 (2d Cir. 2011).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . ." *Id.*

Once the court determines that the moving party has met its burden, the burden

5

shifts to the opposing party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). The nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars showing that a trial is needed . . . ." *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotation marks and citation omitted) (quoted in *Kaminski v. Anderson*, 792 F. Supp. 2d 657, 662 (W.D.N.Y. 2011)).  In considering whether these respective burdens have been met, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks and citation omitted).

The court recognizes its duty to "extend extra consideration" to *pro se* plaintiffs and that "*pro se* parties are to be given special latitude on summary judgment motions." *Bennett v. Goord*, 2006 WL 2794421, at *3 (W.D.N.Y. Aug. 1, 2006), *aff'd*, 2008 WL 5083122 (2d Cir. 2008) (quoting *Salahuddin v. Coughlin*, 999 F. Supp. 526, 535 (S.D.N.Y. 1998)); *see also McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (*pro se* party's pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest"). "Nevertheless, proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, 1999 WL 983876, at *3 (S.D.N.Y. October 28, 1999) (citing cases).

6

Defendants contend that summary judgment should be granted dismissing the complaint as plaintiff has failed to raise a genuine issue of material fact regarding the alleged excessive use of force or retaliation.  In response to the motion, plaintiff has failed to file a response.  When a party moves for summary judgment against a *pro se* litigant, either the movant or the district court must provide the *pro se* litigant with notice of the consequences of failing to respond to the motion. *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 620 (2d Cir.1999); *see also Irby v. New York City Transit Auth., 262* F.3d 412, 413 (2d Cir.2001).  Plaintiff received the required notice with the motion for summary judgment (Item 35).

A party's failure to respond to a summary judgment motion "does not [alone] justify the granting of summary judgment." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). Instead, as the Second Circuit has explained,

> where the non-moving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden. . . . Moreover,  . . . the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement [but] must be satisfied that . . . evidence in the record supports the assertion[s contained therein] . . . .

> An unopposed summary judgment motion may also fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law.

*Id.* (internal quotations omitted) (citing, *inter alia*, *Giannullo v. City of New York*, 322 F.3d 139 (2d Cir. 2003)); *see also Fabrikant v. French*, 691 F.3d 193, 215 n.18 (2d Cir. 2012). In short, just as with a contested motion for summary judgment, the court "must review the motion  . . . and determine from what it has before it whether the moving

party is entitled to summary judgment as a matter of law." *Vermont Teddy Bear Co.*, 373 F.3d at 346 (quoting *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993)).

## 2. Excessive Force

The Eighth Amendment to the U.S. Constitution provides that "cruel and unusual punishments [shall not be] inflicted." U.S. Const. amend. VIII. That rule, applicable to the states through the Fourteenth Amendment, *see Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976), is violated by the unnecessary and wanton infliction of pain and suffering. *See Whitley v. Albers*, 475 U.S. 312, 320 (1986). In assessing an inmate's claims that prison officials subjected him to cruel and unusual punishment by using excessive force, courts must determine whether the prison officials acted "in a good-faith effort to maintain or restore prison discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

To prove an excessive force claim, an inmate must satisfy both an objective test and a subjective test. *Id.,* pp. 7-8. Objectively, a section 1983 plaintiff must establish that the force applied was "sufficiently serious" or harmful to establish a constitutional violation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (additional citations omitted)); *see also Romano v. Howarth*, 998 F.2d 101, 104 (2d Cir. 1993). This objective component is "contextual and responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 9. A plaintiff "need not prove 'significant injury' to make out an excessive force claim," *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999), but "a *de minimis* use of force will rarely suffice to state a constitutional claim." *Romano*, 998 F.2d at 105. *De minimis* force, even If clearly

unpleasant to endure, does not violate the Eighth Amendment where "the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (internal quotation marks and citation omitted).  Although "some degree of injury is ordinarily required to state a claim," *United States v. Walsh*, 194 F.3d 37, 50 (2d Cir. 1999), the core judicial inquiry, is not the extent of the injury sustained, but rather "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  *Wilkins v. Gaddy*, ___ U.S. ___, 130 S.Ct. 1175, 1179 (2010) (quoting *Hudson*, 503 U.S. at 7).

The subjective test for an Eighth Amendment excessive force claim requires the inmate to show that the prison officials "had a 'wanton' state of mind when they were engaging in the alleged misconduct." *Davidson v. Flynn*, 32 F.3d 27, 30 (2d Cir. 1994) (citing *Hudson*, 503 U.S. at 7).  When determining whether the subjective test has been satisfied, courts may consider, "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'"  *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).  "The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it."  *Id.*

Here, plaintiff alleges he was maliciously attacked by CO Diebel because Diebel stated that plaintiff "gave the evil eye" to Diebel two years prior to the incident.  Plaintiff maintains that CO Diebel grabbed him by the throat and slapped him twice.  The medical report completed after the incident noted an absence of visible injuries, with no redness or scratches.  Defendants maintain that CO Diebel did not slap or grab plaintiff

by the throat, and only performed a pat frisk of plaintiff approved by Sergeant Cheney. Although the court must view the facts in the light most favorable to the plaintiff, *Amnesty*, 361 F.3d at 122, plaintiff has not met his burden of showing specific facts that would raise a genuine issue for trial.

Defendants argue that, even assuming the truth of plaintiff's allegations, plaintiff has failed to prove the objective prong of his Eighth Amendment claim. Specifically, defendants argue that even if the allegations that Diebel "slapped the plaintiff twice and choked him are taken as true . . ., there is no basis for a reasonable jury to determine that the force used by the defendants was more than *de minimis*." (Item 35, att. 2, p. 8.) While plaintiff testified that he "saw stars" and was "woozy" following the alleged assault, there is no indication that he sought medical treatment until two days later. Plaintiff's medical records from July 20, 2009 indicate no signs of injuries consistent with his allegations and no medical treatment. Accordingly, the court finds that the amount of force used in this case was *de minimis*. *See Sprau v. Coughlin*, 997 F.Supp. 390, 394 (W.D.N.Y. 1997) (officer's grabbing and hitting of an inmate across the neck, face, and eye was a *de minimis* use of force); *Brown v. Busch*, 954 F.Supp. 588, 597 (W.D.N.Y. 1997) (finding that an officer's pushing, shoving, and striking of an inmate was a *de minimis* use of force).

Moreover, defendants maintain that the randomly assigned pat frisk, performed by CO Diebel and authorized by Sergeant Cheney, was done in a "good-faith effort to maintain and restore discipline" without malicious or "sadistic intent" to cause plaintiff harm (Item 35, att. 2, pp. 9-10). It is well established that conducting a pat frisk on a prisoner is a "necessary procedure to ensure safety and security of prisons." *Tavares v.*

*City of New York*, 2011 WL 5877550, at *6 (S.D.N.Y. October 17, 2011), *report and recommendation adopted*, 2011 WL 5877548 (S.D.N.Y. November 23, 2011).  Even granting plaintiff the benefit of every favorable inference, in the absence of specific facts alleging malicious intent on the part of CO Diebel, no reasonable jury could find that Diebel acted maliciously and sadistically to cause plaintiff harm.  Accordingly, the defendants' motion for summary judgment is granted, and plaintiff's Eighth Amendment claim is dismissed.

## 3.  Retaliation

"Retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments." *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996). "[T]he Second Circuit has admonished district courts to approach prisoner retaliation claims 'with skepticism and particular care,' because 'virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'" *Bumpus v. Canfield,* 495 F.Supp.2d 316, 325 (W.D.N.Y. 2007) (quoting *Dawes v. Walker,* 239 F.3d 489, 491 (2d. Cir. 2001)).  A plaintiff asserting a First Amendment retaliation claim "must allege '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d. Cir. 2003) (quoting *Dawes*, 239 F.3d at 492).

Verbal harassment is an insufficient ground upon which to base a section 1983 claim in the absence of an allegation of a specific injury.  *See Johnson v. Eggersdorf*, 8

11

Fed. Appx. 140, 143 (2d Cir. 2001); *see also Purcell v. Coughlin*, 790 F.2d 263, 265 (2d. Cir. 1986) ("[t]he claim that a prison guard called Purcell names also did not allege any appreciable injury and was properly dismissed"); *Rosales v. Kikendall,* 677 F.Supp.2d 643, 648 (W.D.N.Y. 2010) (collecting cases). "Verbal threats, abuse and even vile language" do not arise to the level of a constitutional violation under 42 U.S.C. § 1983. *Mroz v. City of Tonawanda*, 999 F.Supp. 436, 465 (W.D.N.Y. 1998) (citing *Beal v. City of New York*, 1994 WL 163954, at *6 (S.D.N.Y. April 22, 1994), *aff'd,* 89 F.3d 826 (2d Cir. 1995)).  Thus, "verbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983."  *Aziz Zarif Shabazz v. Pico,* 994 F.Supp. 460, 474 (S.D.N.Y. 1998).  However, courts have recognized rare exceptions when the threat involved was "inspired by malice rather than merely careless or unwise zeal" such that it amounted to an abuse of official power that "shocks the conscience."  *Mroz,* 999 F.Supp. at 465 (internal quotes and cites omitted).

Plaintiff has alleged that he engaged in protected activity through the filing of grievances.  However, even accepting the truth of plaintiff's allegations regarding the statement of CO Hilton, the alleged verbal harassment is insufficient to show an adverse action for purposes of a First Amendment retaliation claim.  Additionally, plaintiff has made no showing that the alleged statement by CO Hulton was "inspired by malice" or amounted to an abuse of power that was shocking to the conscience.

Accordingly, the defendants' motion for summary judgment is granted, and the retaliation claim is dismissed.

## CONCLUSION

The defendants' motion for summary judgment (Item 35) is granted, and the complaint is dismissed.  The Clerk is directed to enter judgment in favor of defendants. Additionally, the court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and *in forma pauperis* status is denied for purposes of an appeal.  *Coppedge v. United States,* 369 U.S. 438, 444-45 (1962).

So Ordered.


_____\s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated:   12/19/2012
p:\pending\2010\10-343.OCT2512

13